UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| CINDY LEIGH BALDWIN, | ) | |
| | ) | |
| PLAINTIFF, | ) | Civil Action No. _____ |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | PETITION AT LAW |
| IOWA CITY COMMUNITY | ) | AND JURY DEMAND |
| SCHOOL DISTRICT; STEPHEN MURLEY; | ) | |
| CHACE RAMEY; JANE FRY; LISA | ) | |
| TEBOCKHORST; DENNIS HARNACK, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## **COMPLAINT**

### **PRELIMINARY STATEMENT**

1.     This is an action for damages brought by Cindy Baldwin (hereinafter

"Ms. Baldwin"), a member of a covered age group with a disability, that was

discriminated and retaliated against, and suffered a material adverse employment

action on June 25, 2019, by the Iowa City Community School District (hereinafter,

"School District") after she exercised her lawfully entitled medical leave rights.

2.     This action seeks relief for Defendants' violations of the Ms. Baldwin's

rights under the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101,

*et. seq.* ("ADA"), the Age Discrimination in Employment Act of 1967, as amended, 29

U.S.C. § 621, *et. seq.* ("ADEA"), the Family Medical Leave Act of 1993, as amended, 29, U.S.C. § 2601, *et. seq.* ("FMLA"), the  Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1166, *et. seq.*, the Iowa Civil Rights Act of 1965, as amended, Iowa Code Chapter 216, *et. seq.,* and causes of action pursuant to Iowa law common law.

3.      On June 25, 2019, Ms. Baldwin was a fifty-three-year-old teacher and resident of Johnson County, Iowa, who had worked for the School District since 1989.

4.      Beginning in the fall of 2017, and continuing until June 25, 2019, Ms. Baldwin had a disability associated with the following medical diagnoses:  Major Depressive Disorder; Generalized Anxiety Disorder with panic; Attention Deficit Hyperactivity Disorder, and Post-Traumatic Stress Disorder.

5.      The School District and its employees Stephen Murley, Chace Ramey, Jane Fry, Lisa TeBockhorst, and Dennis Harnack intentionally discriminated and retaliated against Ms. Baldwin due to her age and disability, did not provide her with reasonable accommodations, harassed and intimidated her when she returned to teaching following medical leave, required her to participate in an intensive assistance plan which the School District and its employees failed to properly implement, wrongfully stated she was not meeting required teaching standards, used her medical leave records against her during the grievance process to justify

its material adverse employment action and failed to provide her the lawfully required COBRA notices associated with the continuation of her health insurance for herself and her dependents.

6.    The School District and its employees violated its obligations to Ms. Baldwin under federal employment and civil rights laws, and Iowa law.

## JURISDICTION

7.    This Court has subject matter jurisdiction over this action pursuant to:

a.    Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et. seq.* ("ADA");

b.    Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et. seq.* ("ADEA");

c.    Family Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et. seq.* ("FMLA");

d.    Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq,* as amended by the Consolidated Omnibus Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1166, *et. seq.*

e.    28 U.S.C. § 1331, 1355, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States, and district courts original jurisdiction of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress.

3

8.     This Court has personal jurisdiction over the School District, which is located in Johnson County, Iowa.

9.     This Court has personal jurisdiction over Steven Murley, Chace Ramey, Jane Fry, Lisa TeBockhorst, and Dennis Harnack, as they were at all times relevant to this matter employees of the District and residents of the State of Iowa.

## VENUE

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c), to wit:

    a.     The District's primary place of business in this judicial district; and

    b.     A substantial part of the events or omissions giving rise to the Ms. Baldwin's claims occurred within this judicial district.

## PARTIES

11.     Ms. Baldwin is a natural person domiciled in Johnson County, Iowa.

12.     The School District is a school district located in Johnson County, Iowa.

13.     Steven Murley, Chace Ramey, Jane Fry, Lisa TeBockhorst, and Dennis Harnack are all-natural persons were at all times relevant to this matter employees of the District and residents of the State of Iowa.

4

## FACTS

14.     Ms. Baldwin began teaching elementary art for the Iowa City Community School District in August of 1989 and taught children in Johnson County Iowa for 30 years.

15.     At the end of her 30th year of teaching, on June 25, 2020, the School District determined it would not offer Ms. Baldwin a new teaching contract for the 2019-2020 school year.

16.     Ms. Baldwin developed a serious health condition during the first semester of her 29th year of teaching when she began exhibiting problems with concentration and stress management in the fall of 2017.

17.     Citing performance concerns related to her serious health condition, the School District placed Ms. Baldwin an involuntary "intensive" assistance plan during that same semester in the fall of the 2017-2018 school year.

18.     Due to her serious health condition, the School District encouraged Ms. Baldwin to take medical leave in the second semester of the 2017-2018 school year.

19.     After she had been on medical leave, in the summer before the 2018-2019 school year, the School District notified Ms. Baldwin that her teaching assignment would change to include a different school within the district, Hoover elementary.

20.     As such, during the 2018-2019 school year Ms. Baldwin taught at both Hoover and Hills elementary schools.

5

21.     Due to the new teaching assignment that coincided with her return from medical leave, Ms. Baldwin was faced with the challenge of integrating into the new school.

22.     As part of a continued requirement that Ms. Baldwin participate in the School District's intensive assistance program, she was required to begin using teaching techniques that were new to her, including using a word processor to create lesson plans and other detailed organizational techniques.

23.     In her previous 29 years of teaching, Ms. Baldwin was never required to use computer software to create her lesson plans.

24.     When Ms. Baldwin returned to work for the 2018-2019 school year, she continued to suffer from the same symptoms diagnosed by her medical provider the previous school year.

25.     The new teaching assignment aggravated Ms. Baldwin's serious health condition by creating new teaching challenges concurrently with the intensive assistance plan.

26.     In August of 2018, Ms. Baldwin notified the School District and her supervisors that she felt overwhelmed and asked for help.

27.     Thereafter, Ms. Baldwin used approximately 28 days of approved medical leave between August and October of 2018.

28.     In a letter dated November 6, 2018, Ms. Baldwin's health care provider notified the School District that Ms. Baldwin had a disability that required

accommodations, including allowing for longer times to for prepare and complete tasks, quiet spaces to work, and needed breaks.

.      29.     Ms. Baldwin's health care provider also notified the School District that her medical diagnoses included attention deficit hyperactivity disorder, predominantly inattentive type, generalized anxiety disorder, and depression.

30.     The health care provider specifically notified the School District about how her disability would manifest at the workplace, including problems with finalizing the details of projects, organizing, remembering appointments and obligations, and starting tasks.

31.     Ms. Baldwin also requested extra time to submit lesson plans, requesting that she have the weekend to work on the next week's plans instead of turning them in on Friday.

32.     The School District did the exact opposite of what her health care provider recommended by continuing the require her to participate in the intensive assistance plan and master new tasks.

33.     Ms. Baldwin again had to use medical leave in February and March of 2019.

34.     Following her approved leave when she returned to work in March of 2019, Ms. Baldwin did not realize that her teaching position was in jeopardy.

35.     Ms. Baldwin was harassed and intimidated after returning from medical leave when the School District pressured her to comply with its intensive assistance plan within a truncated timeline.

36.     Ms. Baldwin's supervisory principal at Hills elementary, Lisa TeBockhorst, even recommended that Ms. Baldwin work to master work tasks while on medical leave.

37.     In spite of its insistence that Ms. Baldwin participate in the intensive assistance plan, the School District did not administer its plan according to its own guidelines, including failing to provide Ms. Baldwin notice of the program requirements and alleged shortfalls, following established plan timelines, and required peer and supervisory classroom observation and feedback.

38.     Ms. Baldwin asserts that she was not fairly evaluated and that the School District's intensive assistance program was a pretext used to create negative paperwork to justify not renewing her teaching contract for the 2019-2020 school year.

39.     In spite of the challenges she faced, Ms. Baldwin diligently worked to accomplish the new tasks required by the School District.

40.     However, Ms. Baldwin's efforts and successes were not credited by the School District or her supervisors.

41.     Ms. Baldwin's supervisory principal at Hoover elementary, Dennis Harnack, did not fully participate as required in the intensive assistance program by observing and evaluating her classroom instruction.

42.     Ms. Baldwin's supervisory principal at Hills elementary, Lisa TeBockhorst, also did not fully participate as required in the intensive assistance program by observing and evaluating her classroom instruction, and when she did observe Ms. Baldwin, she intentionally provided wrongfully subjective failing evaluations.

43.     Ms. Baldwin complained about the subjective and faulty evaluation process to principal Lisa TeBockhorst via email on April 18, 2019, and then to Superintendent Stephen Murley and human resources representative Chace Ramey by letter on April 20, 2019.

44.     Ms. Baldwin also notified the School District that a reasonable accommodation could also include limiting her teaching responsibilities to one school, instead of two schools.

45.     On April 22, 2019, School District human resources representative Jane Fry told Ms. Baldwin that the School District intended to sit down with her to discuss the intensive assistance plan evaluations.

46.     Ms. Baldwin's requests for help to the School District administrators were not addressed, and there was no meeting scheduled as promised to discuss the evaluations.

47.     Ms. Baldwin was then notified by the School District on approximately April 26, 2019, that it intended to not renew her teaching contract for the upcoming school year.

48.     The School District justified its action by alleging that Ms. Baldwin failed to adequately meet all Iowa teaching standards for two consecutive years.

49.     In fact, Ms. Baldwin did achieve the teaching standards, but the School District relied on its faulty implementation of its intensive assistance program and biased subjective evaluations to allege she failed to meet the teaching standards.

50.     Due to her serious health condition and approved medical leaves, Ms. Baldwin was not in the classroom during the 2017-2018 and 2018-2019 school years long enough to be fairly participate in the intensive assistance program and receive evaluations.

51.     The School District approved her medical leaves, and then used the approved leave to harass and intimidate Ms. Baldwin upon her return.

52.     Principal Lisa TeBockhorst falsely told Ms. Baldwin that she did not know that the School District planned to not renew her teaching contract.

53.     Prior to taking the approved medical leaves during the 2017-2018 and 2018-2019 school years, Ms. Baldwin did not have a history of excessive absenteeism.

54.     Ms. Baldwin was under the care of a health care provider for her serious health conditions and disability in both the 2017-2018 and 2018-2019 school years and notified the School District of that fact as required by law.

55.     After being notified that the School District did not intend to offer her a contract for the 2019-2020 school year, Ms. Baldwin requested a grievance hearing with the School District that occurred on June 24, 2019.

56.     At the grievance hearing, the School District was again notified that Ms. Baldwin had a disability and that she needed reasonable accommodations.

57.     In the grievance hearing with the School District, Ms. Baldwin's approved medical leave requests and alleged absences were used as evidence to justify not offering her a new full-time teaching contract for the 2019-2020 school year.

58.     Following the grievance hearing on June 24, 2020, the next day on June 25, 2019 the School District decided not offer Ms. Baldwin a teaching contract for the 2019-2020 school year.

59.     Ms. Baldwin's 2018-2019 teaching contract thereafter ended on June 30, 2019.

60.     Despite knowing that Ms. Baldwin and her son both had serious health conditions, the School District then failed to provide Ms. Baldwin with required notice and enrollment form associated with continuing COBRA health care insurance coverage as required by law.

61.     The material adverse employment action on June 25, 2019, was a "qualifying event" as defined by the statute.

62.     COBRA laws required the School District to allow former employees the opportunity to continue their health care covered under its plan if a qualifying event occurs.

63.     As a result of this violation, Ms. Baldwin was unable to make an informed decision whether to elect coverage for herself and her dependents, which caused Ms. Baldwin to lose health care coverage for herself and her dependents.

64.     Adding to the harassment and intimidating treatment, the School District then again violated the law when it failed to reimburse Ms. Baldwin for her accrued sick leave, and actually withheld deductions from her final pay for health insurance premiums for the insurance she no longer possessed.

65.     In spite of Ms. Baldwin's request to have the premium deductions reimbursed, the School District did not reimburse her.

66.     After 30 years of dedicated teaching, while on administrative leave at the end of the 2018-2019 school year, the School District threw Ms. Baldwin's personal property and art projects from her classroom into a dumpster.

67.     During the 2018-2019 school year, the School District worked aggressively to eliminate older tenured teachers for budgetary reasons.

68.    Ms. Baldwin's age, disability, and use of medical leave were the School District's motivating factors for its adverse employment actions.

69.    The School District's stated reasons for not offering her a teaching contract for the 2019-2020 school year were not the real reasons for its actions, but were a pretext to hide age, disability, and medical leave discrimination and retaliation.

70.    The School District acted with malice or reckless indifference to Ms. Baldwin's right not to be discriminated against on the basis of her age, disability, and her use of medical leave.

71.    Because of the School District's actions, Ms. Baldwin has suffered injuries, to include but not limited to lost wages and benefits, mental anguish, embarrassment, loss of self-confidence, and future lost income and benefits.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES AND CONDITIONS PRECEDENT**

72.    Based upon her the School District's decision not to offer Ms. Baldwin a 2019-2020 teaching contract on June 25, 2019, Ms. Baldwin filed timely charges of discrimination against the District with the Iowa Civil Rights Commission on March 6, 2020.

73.    On July 2, 2020, less than 90 days prior to the filing of this Petition, the Iowa Civil Rights Commission issued a right to sue letter with respect to the Ms. Baldwin's charges which is attached hereto.

13

74.     All conditions precedent to Ms. Baldwin's claims for relief have been performed or have occurred.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION: ADA VIOLATION DISPARATE TREATMENT
### (Actual Disability)

75.     Ms. Baldwin repleads the allegations set forth as if fully set forth herein.

76.     While a teacher with the School District, Ms. Baldwin had a mental impairment disability that included attention-deficit hyperactivity disorder, predominantly inattentive type, generalized anxiety, depression, and post-traumatic stress disorder.

77.     Ms. Baldwin's disabilities substantially limited her  ability to teach because she had a difficultly focusing and concentrating, which manifested in a difficulty with managing details of projects, organizing, remembering appointments and obligations, and starting tasks.

78.     The School District and other Defendants made it more difficult for Ms. Baldwin to teach by requiring her to begin teaching at a new school after being on medical leave, requiring her to learn and master new technical teaching tasks, and requiring participation in an intensive assistance plan.

79.     Ms. Baldwin could have performed the essential functions of being a teacher at the time the School district failed to offer her a contract for the 2019-2020 school year.

14

80.     The School District and other Defendants knew of Ms. Baldwin's disability and her disability was a motivating factor or played a part in the School District's decision to not offer her a new teaching contract for the 2019-2020 school year.

81.     Because of the Defendants' actions, Ms. Baldwin suffered damages, including loss of wages and fringe benefits, employer-subsidized health insurance, emotional pain and suffering, and other nonpecuniary losses.

## SECOND CAUSE OF ACTION:  ADA VIOLATION FAILURE TO REASONABLY ACCOMMODATE

82.     Ms. Baldwin repleads the allegations set forth as if fully set forth herein.

83.     While employed with the School District, Ms. Baldwin had a mental impairment disability that included attention-deficit hyperactivity disorder, predominantly inattentive type, generalized anxiety, depression, and post-traumatic stress disorder.

84.     Ms. Baldwin's mental impairment disability substantially limited her ability to teach because she had difficulties focusing and concentrating, which manifested in difficulties with managing details of projects, organizing, remembering appointments and obligations, and starting tasks.

85.     The School District and other Defendants knew of Ms. Baldwin's mental impairment disability.

86.     Ms. Baldwin could have performed the essential functions of being a teacher at the time the School District's material adverse employment action if she would have been allowed to only teach at one school instead of two, had been allowed longer times to prepare for and complete tasks, had been given quiet spaces to work, and needed breaks.

87.     Providing Ms. Baldwin with these accommodations would have would have been reasonable.

88.     The School District failed to provide her with the noted accommodations.

89.     Because of the Defendants' actions, Ms. Baldwin has suffered damages, including loss of wages and fringe benefits, employer-subsidized health insurance, emotional pain and suffering, and other nonpecuniary losses.

## THIRD CAUSE OF ACTION:  ADEA, DISCRIMINATION IN EMPLOYMENT ON THE BASIS OF AGE

90.     Ms. Baldwin repleads the allegations set forth as if fully set forth herein.

91.     This claim is brought by Ms. Baldwin against the Defendants for violations of the Age Discrimination in Employment Act of 1967, as amended.

92.     Ms. Baldwin was discriminated against based upon her age by the Defendants.

93.     Due to Ms. Baldwin's age, she was a member of the covered age group.

94.     Ms. Baldwin worked for the School District for 30 years and was able to perform the tasks associated being an elementary art teacher.

95.     On June 25, 2019, the School District decided not to offer her a teaching contract for the 2019-2020 school year.

96.     Ms. Baldwin's age was a motivating factor for not offering her a teaching contract for the 2019-2020 school year.

97.     The School District's and Defendants stated reasons for their decisions were not the real reasons but are a pretext to hide age discrimination.

98.     The School District and other Defendants acted with malice or reckless indifference to Ms. Baldwin's right not to be discriminated against on the basis of her age.

99.     Because of the Defendants' actions, Ms. Baldwin has suffered injuries, to include but not limited liquidated damages for lost wages and benefits and future lost income and benefits.

**FOURTH CAUSE OF ACTION:  FLMA DISCRIMINATION AND RETALIATION – EMPLOYEE WITH A SERIOUS HEALTH CONDITION**

100.     Ms. Baldwin repleads the allegations set forth as if fully set forth herein.

101.     Ms. Baldwin was eligible for medical leave.

102.     Ms. Baldwin had a serious health condition.

103.   At various times during the 2017-2018 and 2018-2019 school years, Ms. Baldwin was absent from work due to approved medical leaves, a legally protected activity.

104.   Ms. Baldwin provided the School District timely notice of her need to be absent from work.

105.   Ms. Baldwin gave the Defendants sufficient information so that they knew or should have known the absences were due to her serious health conditions.

106.   The School District did not renew Ms. Baldwin's teaching contract for the 2019-2020 school year, a material adverse employment action that effectively terminated her employment with the School District, and used her medical leave documentation in its deliberations when it made this decision.

107.   Ms. Baldwin's absences from work during the 2017-2018 and 2018-2019 school years was a motivating factor in the School District decision to not renew Ms. Baldwin's teaching contract for the 2019-2020 school year, effectively terminating her, and used her medical leave documentation in its deliberations to make this decision.

108.   The Defendants' stated reasons for its decision was a pretext to hide its FMLA discrimination and retaliation against Ms. Baldwin.

109.   There is a causal connection between Ms. Baldwin's use of medical leave and the material adverse employment action.

18

110.    Because of the Defendants' actions, Ms. Baldwin has suffered injuries, to include but not limited liquidated damages for lost wages and benefits and future lost income and benefits, warranting an award of actual damages, costs, and reasonable attorney's fees.

## FIFTH CAUSE OF ACTION:  FAILURE TO PROVIDE NOTICE OF COBRA COVERAGE IN VIOLATION OF STATUTE AND REGULATION

111.    Ms. Baldwin repleads the allegations set forth as if fully set forth herein.

112.    The School District failed to provide Ms. Baldwin with a legally sufficient required notice of her right to elect healthcare coverage under COBRA.

113.    The adverse employment action on June 25, 2019, was a "qualifying event" as defined by the statute.

114.    As a result of this violation, which caused Ms. Baldwin to lose her health coverage for herself and her dependents.

115.    Because of the School District's actions, Ms. Baldwin has suffered injuries, to include but not limited to expenses related to medical care, emotional pain and suffering, and other nonpecuniary losses.

## SIXTH CAUSE OF ACTION:  INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

116.    Ms. Baldwin repleads the allegations set forth as if fully set forth herein.

117.    Ms. Baldwin had a contract to teach with the School District.

118.    Stephen Murley, Chace Ramey, Jane Fry, Lisa TeBockhorst, and Dennis Harnack knew of the contract.

119.    The above-named Defendants intentionally and improperly interfered with the contract by discriminating and retaliating against Ms. Baldwin due to her age and disability, by not provide her with reasonable accommodations, by harassing and intimidating her when she returned to teaching following medical leave, by requiring her to participate in an intensive assistance plan which they failed to properly implement, and by wrongfully stating that she was not meeting required teaching standards.

120.    The interference caused the Ms. Baldwin's performance of the contract to be more burdensome.

121.    Ms. Baldwin was required to perform extra duties to meet the contractual requirements, and thereafter was not offered a teaching contract for the 2018-2019 school year, causing Ms. Baldwin financial losses in excess of the jurisdictional limits.

122.    At least some of the individual Defendants' conduct was outside the scope of their employment.

123.    As a proximate result of the Individual Defendants' conduct, Ms. Baldwin has sustained injuries and is entitled to damages in an amount in excess of this Court's jurisdictional minimum.

124.    The Individual Defendants' conduct was willful and wanton and in reckless disregard of Ms. Baldwin's rights.

125.    Because of the Defendants' actions, Ms. Baldwin has suffered injuries, to include but not limited to expenses related loss income, medical care, emotional pain and suffering and other nonpecuniary losses.

## SEVENTH CAUSE OF ACTION: TORTIOUS DISCHARGE AGAINST PUBLIC POLICY

126.    Ms. Baldwin repleads the allegations set forth as if fully set forth herein.

127.    Ms. Baldwin was an employee of the School District and on June 25, 2020, was denied a teaching contract for the 2019-2020 school year.

128.    Ms. Baldwin was disabled and used lawfully entitled medical leave during the 2017-2018 and 2018-2019 school years.

129.    The denial to offer Ms. Baldwin a teaching contract for the 2019-2020 school year was because she exercised a statutory right or privilege.

130.    Allowing employees to use medical leave is an important public policy action and Ms. Baldwin's tortious discharge undermines the public policy of exercising rights pursuant to labor statutes without the fear of retaliation.

131.    This claim is Mr. Baldwin's opportunity to enforce her rights in regard to public health, safety, morals, and general welfare.

132.    The School District's decision not to offer Ms. Baldwin a teaching

contract for the 2019-2020 school year was in retaliation and was against public

policy.

133.    Ms. Baldwin's use of medical leave was the determining factor in the

School District's decision.

134.    That the Defendants' actions damaged Ms. Baldwin.

135.    Because of the Defendants' actions, Ms. Baldwin has in the past and

will in the future suffer injuries and damages including, but not limited to, pain and

suffering, lost wages and benefits, and other emoluments of employment.

### **PRAYER FOR RELIEF**

WHEREFORE Ms. Baldwin requests that this Court grant her the following

relief:

a.    In regard to the ADA violations, declare that the School District's acts

violated Ms. Baldwin's rights under the ADA and grant judgment in favor of Ms.

Baldwin as set for the First and Second Causes of Action, and award compensatory

damages to include loss of wages and benefits, employer-subsidized health

insurance, future pecuniary losses, emotional pain and suffering, court costs, and

reasonable attorney's fees.

b.    In regard to the ADEA violations, declare that the School District's

acts violated Ms. Baldwin's rights under the ADEA and grant judgment in favor of

Ms. Baldwin as set forth in the Third Cause of Action, and award damages to

include lost wages and benefits, future pecuniary losses, emotional pain and suffering, court costs, and reasonable attorney's fees.

      c.      In regard to the FMLA violations, declare that the School District's acts violated Ms. Baldwin's rights under the FMLA and grant judgment in favor of Ms. Baldwin as set forth in the Fourth Cause of Action, and award actual damages to include lost past and future income and benefits, court costs, and reasonable attorney's fees.

      d.      In regard to the COBRA violations, declare that the School District's acts violated Ms. Baldwin's rights under the COBRA statute and grant judgment in favor of Ms. Baldwin as set forth in the Fifth Cause of Action, and award damages for expenses related to her medical care, court costs, and reasonable attorney's fees.

      e.      In regard to the tortious interference with contractual relations, declare that the Defendants' acts violated Ms. Baldwin's contractual rights and grant judgment in favor of Ms. Baldwin as set forth in the Sixth Cause of Action, and award damages to include lost past and future income and benefits, court costs, and reasonable attorney's fees.

      f.      In regard to the tortious discharge in violation of public policy, declare that the Defendants' acts violated public policy and Ms. Baldwin's employment rights and grant judgment in favor of Ms. Baldwin as set forth in the Seventh Cause of Action, and award damages to include lost past and future income and benefits, emotional pain and suffering, court costs, and reasonable attorney's fees.

23

g.      Award Ms. Baldwin pre- and post-judgment interest, as allowed by

law; and

h.      Grant such further relief as this Court deems to be just and

appropriate.

<u>JURY DEMAND</u>

136.    Ms. Baldwin requests a trial by jury.


Respectfully Submitted.

By: <u>/s/ *Gregory F. Greiner, AT0003094*</u>
Attorney for Ms. Baldwin
5550 Wild Rose Lane, Suite 400
West Des Moines, IA 50266
Phone: (515) 650-4399
Fax: (515) 650-4388
Email:  <u>greg@recovery-lawyers.com</u>